***E-FILED - 1/5/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL WILLIAMS, ) | No. C 05-3891 RMW (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR |
| ) | WRIT OF HABEAS CORPUS; DENYING |
| vs. ) | CERTIFICATE OF APPEALABILITY |
| ) | |
| WARDEN TOM L. CAREY, ) | |
| ) | |
| Respondent. ) | |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After moving to the stay the petition in order to exhaust state remedies, petitioner returned to federal court with a first amended petition. The court ordered respondent to show cause why the amended petition should not be granted. Respondent has filed an answer addressing the merits of the amended petition. Petitioner filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and DENIES the petition.

**BACKGROUND**

On January 28, 2001, at around 3:00 a.m., petitioner and five passengers pulled into a gas station. (Resp. Ex. 9, (People v. Williams, California Court of Appeal, Fifth Appellate District, Case No. A099284, July 30, 2003) at 1.) Petitioner's blood alcohol level was estimated to be at

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

.25 percent. (Id.) As petitioner was pulling out of the gas station, he hit Louis Roberson ("victim"), who had walked in front of the car. (Id.) Jennifer Jones, a passenger, saw the victim go under the car. (Id.) Jones testified that she screamed for petitioner to stop and others were screaming to be let out of the car. (Id.)

Tamika Armstrong, another passenger, testified that no one said anything about someone getting hit. (Id. at 2.) However, the prosecution impeached her by introducing her preliminary hearing testimony, in which Armstrong testified that Jones yelled, "You hit that man," as petitioner drove away. (Id.)

As petitioner's car hit the victim, the victim got caught under one of the wheels. (Id.) After driving several blocks, petitioner stopped the car and everyone got out. (Id.) Jones saw that the victim was alive albeit still underneath the car and she said so. (Id.) Another unnamed passenger told Jones not to say anything to anyone. (Id.) That passenger got behind the wheel, petitioner got back in the car, and they drove off. (Id.) At some point, the victim's body separated from the car and eventually, the victim died of head and chest injuries as well as asphyxia. (Id.)

Police found petitioner at 4:30 a.m. and discovered blood and scrape marks on his car. (Id.) Although petitioner was glassy-eyed and smelled of alcohol, he denied driving his car after 10:00 p.m. or drinking more than one single beer. (Id.)

After arrest, petitioner was charged with murder, gross vehicular manslaughter while intoxicated, felony leaving the scene of an accident, misdemeanor driving under the influence, misdemeanor driving with a blood-alcohol level above .08 percent, and various enhancements. (Id.) A jury convicted petitioner on all counts and enhancements, and the trial court sentenced him to 15 years to life for second degree murder. (Id.) On July 30, 2003, the state appellate court affirmed petitioner's conviction and sentence and denied petitioner's habeas corpus petition. (Resp. Exs. 9, 10.) On October 29, 2003, the state supreme court denied both petitions for review. (Resp. Exs. 12, 14.) After exhausting state post-conviction remedies, the instant amended petition was filed on October 4, 2006.

# DISCUSSION

**A.     Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

3

evidence presented in the state-court proceeding." <u>Miller-El</u>, 537 U.S. at 340. The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000). The standard of review under the AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. <u>Richter v. Hickman</u>, 521 F.3d 1222, 1229 (9th Cir. 2008).

**B.     Petitioner's Claims**

   1.     <u>Jury instruction error</u>

Petitioner claims that the trial court erred by giving a jury instruction that referenced the felony murder rule. Specifically, the instruction stated:

> *If a person causes another's death while committing another felony which is dangerous to human life, the crime is murder.* If a person causes another's death while committing a misdemeanor, which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter.
>
> There are many acts which are lawful but nevertheless endanger human life. If a person causes another's death by doing an act or engaging in conduct in a criminally negligent manner without realizing the risk involved, he is guilt of involuntary manslaughter. If, on the other hand, the person realized the risk and acted in total disregard of the danger to life involved, malice is implied and the crime is murder.
>
> (CALJIC No. 8.51, RT 483-84, CT 378.) (Italics added.)

Petitioner argues that the reference to felony murder in the instruction violated his due process

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

1 right. The jury was instructed on three other felonies in addition to murder: leaving the scene of
2 an accident resulting in death or serious permanent injury; gross vehicular manslaughter; and
3 involuntary manslaughter. None of these felonies could be properly considered for purposes of
4 the felony murder rule: the first felony was not an inherently dangerous felony, so it could not
5 support application of the felony murder rule; and the remaining two felonies were
6 impermissible under the merger doctrine, see People v. Ireland, 70 Cal. 2d 522, 538 (1969).
7 Therefore, suggests petitioner, the court improperly inserted a second degree felony murder
8 theory into the case even though such a theory was legally insufficient. As a result, the jury
9 could have convicted petitioner of second degree felony murder without having to find the
10 required element of implied malice.

11 The California Court of Appeal rejected this claim. The Court of Appeal agreed that
12 giving the instruction was erroneous, but determined that there was no "reasonable likelihood"
13 that the instruction misled the jury. In reaching that conclusion, the court considered all the jury
14 instructions as a whole as well as counsels' closing arguments. The court determined that the
15 instructions made no other mention of felony murder and explicitly defined malice, and that
16 closing arguments on both sides focused on whether the evidence demonstrated implied malice.
17 The court concluded that both the instructions and counsels' statements made it "unmistakably
18 clear" that the jury had to find malice in order to convict petitioner of murder.

19 To obtain federal collateral relief for errors in the jury charge, a petitioner must show that
20 the ailing instruction by itself so infected the entire trial that the resulting conviction violates due
21 process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). The instruction may not be judged in
22 artificial isolation, but must be considered in the context of the instructions as a whole and the
23 trial record. See id.; see, e.g., Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam)
24 (applying the "reasonable likelihood" language of Estelle). A conviction based on a general
25 verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may
26 have relied on an invalid one. Hedgpeth v. Pulido, 129 S. Ct. 530, 530 (2008) (per curiam).
27 Such instructional error is not structural; rather, a reviewing court must apply the harmless-error
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

1  analysis set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), and determine whether the
2  error had a "substantial and injurious effect or influence in determining the jury's verdict."
3  Pulido, 129 S. Ct. at 531; see id. at 532-33 (reversing Ninth Circuit's application of structural
4  error analysis and remanding for application of Brecht).

5        Petitioner argues that the California Court of Appeal used the wrong standard of review
6  to resolve his claim. Specifically, he asserts that Estelle is not the appropriate standard to review
7  instructions on a legally erroneous theory of liability. He states that the proper standard is that
8  announced in People v. Guiton, 4 Cal. 4th 1116, 1129 (1993), which concluded that unless there
9  is a basis in the record to find that the verdict was based on a valid ground, reversal is required.
10 Notwithstanding the fact that this claim appears to be challenging a state court's improper
11 decision under state law, which does not state a claim cognizable in federal habeas corpus
12 proceedings, see Estelle, 502 U.S. at 71-72, this court disagrees that the standard in this case is
13 that announced in Guiton rather than Estelle.

14       The court's decision to apply Estelle is bolstered by Townsend v. Knowles, 562 F.3d
15 1200, 1208-09 (9th Cir. 2009). In that case, the Ninth Circuit analyzed the same due process
16 issue as that asserted by this petitioner and used the standards promulgated by Estelle.
17 Specifically, the Ninth Circuit considered the claim of whether the trial court's instruction on
18 felony murder improperly permitted the jury to convict a defendant of second degree murder
19 without having to also find the element of implied malice. The court stated, "[N]ot every
20 ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process
21 violation. . . . the question is whether there is a reasonable likelihood that the jury has applied the
22 challenged instruction in a way that violates the Constitution." Id. at 1209 (internal citations and
23 quotations omitted). Accordingly, in analyzing petitioner's due process claim, this court will
24 also apply the standards announced in Estelle.

25       Here, the trial court did not read the other standard jury instructions explicitly explaining
26 the felony murder rule. See CALJIC 8.21, 8.32. Throughout the jury instructions, the trial judge
27 emphasized that a murder conviction requires malice. (RT 480-81, 484.) Immediately after
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

reading the erroneous instruction at issue here (RT 483-84), the trial judge emphasized that murder and manslaughter are separated by a finding of malice. (RT 484.)

In addition, the prosecution's closing argument further clarified the jury instructions. (RT 504-06, 507, 518, 525.) In its argument, the prosecution focused the jury on whether the evidence showed implied malice and informed the jury that although the case was charged as murder, the government was proceeding under an implied malice theory. (RT 525.) The defense counsel made similar points, also focusing the jury on the issue of implied malice. (RT 531-32, 543.) At no point in the argument did the prosecution or defense raise the reference to "felony murder."

The Ninth Circuit's analysis in Townsend is particularly instructive here. There, Townsend was charged with one count of murder and an allegation that he personally used a dangerous weapon. Townsend, 562 F.3d at 1209. After a jury trial, Townsend was acquitted of first degree murder but convicted of second degree murder and the jury found true the use of a knife during the murder. Id. at 1203. The Ninth Circuit rejected Townsend's argument that the challenged instruction, CALJIC No. 8.51, violated due process, noting that the jury instruction that included "felony" and "murder" in the same sentence, intending to describe the difference between murder and manslaughter, was too tangential as to have violated due process. Id. at 1210-1211. Further, the court stated that Townsend had not been charged with nor was his jury instructed on felony murder, and the jury was not instructed that assault with a deadly weapon was an inherently dangerous felony. Id. at 1210.[1]

Similarly here, as the California Court of Appeal observed, the jury was not instructed on the felony murder theory; the jury was not instructed on whether any other felonies would

---

[1] As in Townsend, petitioner supports his argument with a citation to Suniga v. Bunnell, 998 F.2d 664, 666-668 (9th Cir. 1993). However, as in Townsend, this court concludes that Suniga, a pre-AEDPA case, is distinguishable for similar reasons: the reference to felony murder in Suniga was not fleeting and the trial court in Suniga instructed on the separate theory of felony murder and also instructed the jury that the other mentioned felony qualified as an inherently dangerous felony. None of those incidents occurred here.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

qualify as an inherently dangerous felony; and the court properly instructed on second degree murder as well as express and implied malice. The challenged instruction was a solitary and inapplicable statement of law among a large number of correct and applicable jury instructions. The jury was instructed not to place any emphasis on any particular sentence or instruction to the point of ignoring the others, but to consider the instructions as a whole and in light of all the others. (RT 467.) Even if a juror decided to rely on the challenged instruction, it was not articulated in a way that negated the requirement that a finding of malice was required to convict petitioner of murder. In other words, the instruction was irrelevant and unhelpful, but it did not so mislead the jury as to cast doubt on the its ability to render a fair verdict.

Viewing the instructions as a whole, and mindful of the court's duty to give appropriate deference to the state court's decision, this court concludes that the California Court of Appeal did not "unreasonably apply federal law when it found that there was no reasonable likelihood the jury was misled." Middleton, 541 U.S. at 438 (finding no constitutional error in giving single erroneous instruction defining "imminent peril" for imperfect self-defense when three other instructions correctly stated the law and parties clarified jury charge in closing argument).

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court authority, nor was it based upon an unreasonable application of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d)(1), (2).

2.  Insufficient Evidence

Petitioner next claims that there was insufficient evidence to support his conviction for second degree murder. Respondent counters that this issue is procedurally barred.

On December 2, 2003, petitioner raised the claim of insufficiency of the evidence in an original state habeas petition to the California Supreme Court. On September 29, 2004, the California Supreme Court summarily denied the petition with citations to In re Clark, 5 Cal. 4th 750 (1993); In re Lindley, 29 Cal. 2d 709 (1947), and In re Dixon, 41 Cal. 2d 756 (1953).

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. Id. The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

While it is still unclear whether Clark or Dixon are independent and adequate state procedural bars, cf. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003), it is of no consequence here because the California Supreme Court's postcard denial also cited Lindley. Lindley is an established independent and adequate state ground barring federal review. Since 1947, California state courts have consistently applied the Lindley procedural rule that sufficiency of the evidence claims cannot be raised in a state habeas petition. Carter v. Giurbino, 385 F.3d 1194, 1198 (9th Cir. 2004) (concluding that the Lindley rule is an independent and adequate state bar). As a result, "unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice," Bennett, 322 F.3d at 580, petitioner's claim of insufficiency of the evidence is procedurally defaulted.

Petitioner does not dispute that this claim is procedurally barred, nor does he attempt to demonstrate cause or prejudice. Accordingly, the court is barred from reviewing this claim.

   3. <u>Ineffective Assistance of Counsel</u>

Petitioner claims that he received ineffective assistance of counsel for failing to object to CALJIC No. 8.51, the instruction referencing felony murder, and failing to investigate and present a defense that the victim was intoxicated.

The California Supreme Court denied both claims without comment or citation.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

The court rejects petitioner's argument that counsel's failure to object to CALJIC No. 8.51 constituted ineffective assistance of counsel. Because the court concluded above in Section B.1, supra, that there was no reasonable likelihood that the challenged instruction misled the jury, petitioner cannot demonstrate that any failure to object was prejudicial. See Townsend, 562 F.3d at 1211-1212. Petitioner does not show that had his trial counsel objected and had the instruction been modified, there is a reasonable probability that the result of the proceedings would have been different. See Strickland, 466 U.S. at 694.

The court also rejects petitioner's argument that counsel's failure to investigate and present a defense that the victim's intoxication contributed to petitioner's crimes rendered counsel's assistance ineffective. Petitioner asserts that counsel should have presented evidence that the victim's toxicology report demonstrated that the victim had a high level of cocaine in his body at the time petitioner hit him with the car. Petitioner further claims that had the jury heard evidence of the victim's intoxication, it would have found that the victim's intoxication rather than petitioner's actions was the contributing factor in his death.

In California, a victim's contributory negligence is not a defense. People v. Marlin, 124 Cal. App. 4th 559, 569 (2004). Here, petitioner could only be found guilty if "there is a causal connection between his conduct and the harm suffered by the victim. To establish this causal

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd

connection and for criminal liability to attach, the evidence must show that the [petitioner's] conduct was both the actual and the legal, or proximate, cause of the death or injuries. Once that has been shown, the actions or failings of the victims or third parties are of no consequence." Id. at 569.

Here, the jury was instructed with CALJIC No. 3.41, which instructs that there may be more than one cause of death. (CT 388.) The instruction goes on to say that if the actions of more than one person can contribute to the death, the conduct of each is the cause of death if his conduct was a "substantial factor" contributing to the death. (Id.) In other words, even if the victim's conduct contributed to his own death, petitioner can still be found guilty if petitioner's conduct was a substantial factor in causing the death.

At trial, a forensic pathologist testified that the victim died of blunt force head and thoracic injuries and traumatic asphyxia. (RT 314.) The pathologist further opined that while there were injuries from the initial impact of the car to the victim, those injuries multiplied as the victim was dragged for several blocks before stopping, creating extensive injuries where whole skin was torn away. (RT 319-20.) The pathologist noted that a combination of those abrasions, plus being crushed underneath a car for several blocks, caused the victim's death. Moreover, the jury found that petitioner acted unlawfully and knew that he had hit the victim, as demonstrated by the fact that it found him guilty of felony hit and run. And the jury also concluded that petitioner was grossly negligent, as demonstrated by the fact that it found him guilty of gross vehicular manslaughter while intoxicated. All these factors taken together clearly establish that petitioner's conduct was a substantial factor that contributed to victim's death. As a result, even if the victim's intoxication contributed to his death, introduction of it into evidence would have made no difference. See Marlin, 124 Cal. App. at 570.

Accordingly, counsel's failure to investigate or present a defense regarding the victim's intoxication could not have been deficient performance nor prejudicial to petitioner. See Strickland, 466 U.S. at 694. The court concludes that the state court's decision denying this claim was not an objectively unreasonable application of clearly established federal law. Richter

v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

**C.    Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus and COA are DENIED. The Clerk shall enter judgment for respondent and close the file.

IT IS SO ORDERED.

Dated:  1/5/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.05\Williams891denyhc.wpd